**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SANDRA K. REIGHARD,** | ) | **CASE NO. 4:11CV1786** |
| Plaintiff, | ) | |
| v. | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Sandra K. Reighard ("Reighard") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

**I. Procedural History**

In February, 2003, Reighard filed an application for POD and DIB alleging a disability onset date of June 1, 2005, claiming that she was disabled. (Tr. 104.) Her application was denied both initially and upon reconsideration. Reighard timely requested an administrative hearing.

On February 12, 2007, an Administrative Law Judge ("ALJ") held a hearing during which Reighard, *pro se*, testified. Richard Riedl, an impartial vocational expert ("VE"), also testified. On March 23, 2007, the ALJ found Reighard was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. Reighard did not request review by the Appeals Council (hereinafter referred to as either "Council" or "Appeals Council").

On August 3, 2007, Reighard filed a second application for POD, DIB, and SSI alleging a disability onset date of September 1, 2006. (Tr. 211-221.) The applications were denied both initially and upon reconsideration. Reighard again timely requested an administrative hearing.

At a June 8, 2009 hearing, Reighard, through counsel,[1] requested that the ALJ reopen the initial claim with the alleged onset disability date of June 1, 2005, but the ALJ denied the request. (Tr. 122.) Nonetheless, in an otherwise fully favorable decision dated August 5, 2009, the ALJ found that Reighard was disabled commencing September 1, 2006. (Tr. 122-126.) On October 5, 2009, Reighard, through counsel, requested the Appeals Council to review the favorable decision claiming that the ALJ erred in refusing to reopen the initial claim. (Tr. 171.) On March 4, 2010, Reighard withdrew her request for review. (Tr. 174.) On March 15, 2010, the Appeals Council vacated the ALJ's favorable decision in its entirety, remanding the case for a new hearing and decision.[2] (Tr. 129-133.)

On July 21, 2010, the ALJ conducted a supplemental hearing. On October 19, 2010, a decision was issued finding that there were a significant number of jobs in the national economy

---

[1]The record reflects that in December, 2007, Reighard retained counsel. (Tr. 169.)

[2]The Appeals Council notified Reighard that the case was being remanded to the ALJ, including the favorable portion, in order to resolve the following issues:

• Evaluate the claimant's mental impairments in accordance with 20 C.F.R. 404.1520a.

• Consider Reighard's residual functional capacity in compliance with *Drummond v. Comm'r* of *Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

• Evaluate Reighard's subjective complaints and provide rational in accordance with the regulations and S.S.R. 96-7p.

• Further consider Reighard's maximum residual functional capacity during the entire period at issue and explain the limitation, using specific references to evidence.

• Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Reighard's occupational base.

(Tr. 130-133.)

Reighard could perform, and, therefore, she was not disabled. This decision became final when the Appeals Council denied further review.

In this highly unusual appeal, Reighard requests the Court to reinstate the favorable decision dated August 5, 2009, claiming that the Appeals Council lacked jurisdiction to remand for a new hearing after she withdrew her request for review. Reighard also contends that the ALJ demonstrated bias against her after the Appeals Council remand. Therefore, since this case does not involve the normal issues regarding disability or the standard for reviewing an ALJ's decision, this Court will only consider the jurisdiction of the Appeals Council and the standard for establishing ALJ bias.

## II. Analysis

Social Security regulations provide guidelines the Appeals Council must follow when reviewing decisions of the ALJs. The following are portions of the regulations at issue in this case:

> **20 C.F.R. § 404.967,** *Appeals Council Review-Generally*
>
> If you or any other party is dissatisfied with the hearing decision or with the dismissal of a hearing request, you may request that the Appeals Council review that action. The Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge. The Appeals Council shall notify the parties at their last known address of the action it takes.
>
> **20 C.F.R. § 404.969,** *Appeals Council Initiates Review*
>
> (a) *General*. Anytime within 60 days after the date of a decision or dismissal that is subject to review under this section, the Appeals Council may decide on its own motion to review the action that was taken in your case. We may refer your case to the Appeals Council for it to consider reviewing under this authority.
>
> * * *
>
> (d) *Appeals Council's action*. If the Appeals Council decides to review a decision or dismissal on its own motion, it will mail a notice of review to all the parties as provided in § 404.973. The Appeals Council will include with that notice a copy of any written referral it has received under paragraph (c) of this section. The Appeals Council's decision to review a case is established by its issuance of the notice of review. If it is unable to decide within the applicable 60-day period whether to review a decision or dismissal, the Appeals Council may consider the case to determine if the decision or dismissal should be reopened pursuant to §§ 404.987 and 404.988. If the Appeals Council decides to review a decision on its own motion or to reopen a decision as provided in §§ 404.987 and 404.988, the notice of review or the notice of reopening issued by the Appeals Council will

3

>advise, where appropriate, that interim benefits will be payable if a final decision has not been issued within 110 days after the date of the decision that is reviewed or reopened, and that any interim benefits paid will not be considered overpayments unless the benefits are fraudulently obtained.
>
>**20 C.F.R. § 404.970,** *Cases the Appeals Council will Review*
>
>(a) The Appeals Council will review a case if –
>
>(1) There appears to be an abuse of discretion by the administrative law judge;
>
>(2) There is an error of law;
>
>(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
>
>(4) There is a broad policy or procedural issue that may affect the general public interest.
>
>**20 C.F.R. § 404.971,** *Dismissal by Appeals Council*
>
>The Appeals Council will dismiss your request for review if you did not file your request within the stated period of time and the time for filing has not been extended. The Appeals Council *may* also dismiss any proceedings before it if –
>
>(a) You and any other party to the proceedings files a written request for dismissal ...

[emphasis added].

The Social Security Administration's ("SSA") interpretation of the regulations at issue is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent. *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 615 (6th Cir. 2010); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549–50 (6th Cir. 2004).

In *Mullen v. Bowen*, 800 F.2d 535 (6th Cir. 1986) (*en banc*), the court noted that the Appeals Council may review any determination by an ALJ that it chooses to review, whether or not there has been an application for such review.[3] *See id.* at 545, 554 (Nelson, J., concurring). The Appeals Council is empowered to consider all aspects of a decision, even if the claimant

---

[3] Eight circuits adhere to *Mullen's* view; the Third Circuit agrees, but requires that the claimant be notified of the review. *See Mullen*, 800 F.2d at 539 n. 4; *Harper v. Sec'y of Health and Human Servs.,* 978 F.2d 260, 264 (6th Cir. 1992); *Powell v. Heckler*, 789 F.2d 176 (3d Cir. 1986).

4

seeks review of a portion only--and the Council need not give notice to the claimant of its intent to review the entire decision. *Gronda v. Sec'y of Health & Human Servs.*, 856 F.2d 36, 38-39 (6th Cir. 1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989).

In *Gronda*, the claimant requested a timely review of the ALJ's denial of disability benefits prior to April 4, 1985, even though the ALJ found him disabled as of that date. *Gronda*, 856 F.2d at 37. The Appeals Council notified Gronda by letter that his request for review was granted, but that it had concluded that the ALJ's finding of disability after April 4, 1985, was not supported by substantial evidence. *Id*. at 37-38. Gronda was also informed that he could submit additional evidence or a written statement within twenty days, but he submitted no additional evidence. *Id.* at 38. After the Appeals Council issued a decision reversing the ALJ, Gronda filed a civil action in district court arguing that Council should have reviewed only the one issue he appealed. *Id*. The *Gronda* Court held that the Appeals Council had jurisdiction to review the entire case without providing notice of its intention to do so, even when a claimant has only requested review of a narrow aspect of the ALJ's decision. *Id*. at 38-39

In *DeLong v. Heckler*, 771 F.2d 266 (7th Cir. 1985), Judge Posner addressed the scope of review by the Appeals Council in a social security disability case where the claimant was found to be disabled, but only after a certain date. *Id*. at 267. The claimant appealed to Council[4], who after concluding that the claimant had never been disabled, reversed the ALJ's decision. *Id*. Judge Posner, applying § 404.969, affirmed the Council's decision as follows:

> The main purpose of section 404.969, the section involved in this case, must be to make the administration of the disability benefits program more consistent by allowing appellate review of decisions in favor of as well as adverse to claimants. This method of assuring greater consistency of results would not be necessary if the proceedings before the administrative law judge were adversarial, but they are not; if the claimant wins, there is no one to appeal. It might not be necessary if there were few judges and few decisions; but the Social Security Administration has hundreds of administrative law judges deciding in the aggregate hundreds of thousands of disability cases a year. The need for greater consistency is acute, *cf. Garrison v. Heckler, supra*, 765 F.2d at 714; *Cummins v. Schweiker*, 670 F.2d 81, 83 (7th Cir.1982), though the practical ability of the Appeals Council, which reviews 40,000 cases a year, to achieve it has been questioned, *see Mashaw,*

---

[4]DeLong was actually trying to file a new claim, but instead completed the paperwork to file with the Appeals Council.

5

> *Bureaucratic Justice: Managing Social Security Disability Claims* 105 (1983).
>
> If the Appeals Council had exercised its powers under section 404.969 and reversed the administrative law judge's grant of benefits to DeLong, there would be no question of the propriety of its action. (The problem that led a panel of this court to reverse the Appeals Council's assumption of jurisdiction in the *Scott* case is not present here.) But the Appeals Council did not proceed under section 404.969. Rather, the claimant sought appellate review, under 20 C.F.R. § 404.967. Since the claimant must take his appeal within 60 days, which is the same period that section 404.969 gives the Appeals Council to decide on its own initiative whether to review the administrative law judge's decision, it would be a quite pointless exercise in shuffling paper for the Council, having received the claimant's notice of appeal within 60 days, to then have to issue its own notice of intent to review the case. Such notice would in fact be perfectly redundant, since the filing of the claimant's notice of appeal obliges the Appeals Council to review the case anyway. If the Appeals Council has, as it unquestionably does, the power to review a grant of benefits on its own initiative, it must have that power in an appeal initiated by the claimant himself.
>
> It can be argued that the exercise of that power could discourage appeals. But this is like saying that cross-appeals are improper because they make appeals less attractive, which is certainly not the accepted position. In any event DeLong could not, simply by not appealing, have prevented the Appeals Council from exercising its power under section 404.969 to review the grant of benefits to him on its own initiative. We add that there is no suggestion that the Appeals Council is exercising this power in a misleading, oppressive, or otherwise improper fashion. And it is plain for the reasons given by the district court that DeLong in fact was not legally entitled to the benefits that he sought.

*DeLong,* 771 F.2d at 268.

Reighard contends that *Gronda* and *DeLong* differ from her case for two reasons. First, Reighard withdrew her request for review before the remand order of March 15, 2010; and, second, she was not provided notice of the Council's intention to review the entire case or the opportunity to submit evidence. (Doc. No. 13 at 9.)

The Commissioner contends that Reighard was notified of the Appeals Council's procedures when she received a letter from the ALJ notifying her of the favorable decision. This letter contained a section putting her on notice that if she appealed, she might lost those benefits:

> If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It will review your case if one of the reasons for review listed in our regulation exists. Section 404.970 of the regulation lists these reasons.
>
> Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.
>
> On review, the Council may itself consider the issues and decide your case. The

Council may also send it back to an Administrative Law Judge for a new decision. (Tr. 118.) Based upon the SSA's letter to Reighard as well as the relevant case law, sufficient notice that the entire decision would be under review was given.

Reighard contends that *Gronda* and *DeLong* are distinguishable as, unlike those claimants, she withdrew her request for a review prior to the Appeals Council issuing its remand order. (Doc. No. 13 at 8-9.) She analogizes her withdrawal to a party's dismissal of a traditional appeal in an adversarial proceeding. *Id*. at 10. The comparison, however, is inapt as the Appeals Council has jurisdiction to review ALJ decisions, even if review is not requested. *See DeLong*, 771 F.2d at 268. Applying *Gronda* and *DeLong*, the Court concludes that the Appeals Council had jurisdiction to review and remand Reighard's claim. Reighard's withdrawal of her request to review had no impact upon the jurisdiction of the Appeals Council. *See* 20 C.F.R. § 404.971.

As such, Reighard's claim that the Appeals Council lacked jurisdiction to reopen the favorable decision also fails.[5] Reighard requested a review and the Appeals Council, acting

---

[5] 20 C.F.R. § 404.987, *Reopening and revising determinations and decisions*, provides in pertinent part as follows:

> (a) *General*. Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review and that determination or decision becomes final. However, a determination or a decision made in your case which is otherwise final and binding may be reopened and revised by us.
>
> (b) *Procedure for reopening and revision*. We may reopen a final determination or decision on our own initiative, or you may ask that a final determination or a decision to which you were a party be reopened. In either instance, if we reopen the determination or decision, we may revise that determination or decision. The conditions under which we may reopen a previous determination or decision, either on our own initiative or at your request, are explained in § 404.988.
>
> 20 C.FR. § 404.988 *Conditions for reopening*, provides in pertinent part as follows:
>
> A determination, revised determination, decision, or revised decision may be reopened--

7

within its jurisdiction, ordered a remand pursuant to §§ 404.967 & 404.969. The Appeals Council did not reopen the case.

Next, Reighard contends that at the July 21, 2010 hearing, the ALJ acting impartially, denied her the right to a full and fair hearing. (Doc. No. 13 at 11-13.) Specifically, she asserts that the ALJ attacked counsel's competence on the record, embarrassing and humiliating him in the presence of his client during the hearing. *Id*. at 13. Portions of the hearing at issue are set forth below:

> ALJ: And I issued a decision that was fully favorable. I found that you were disabled as of September 1, 2006. Yet, you appealed that decision. You did. You asked the Appeals Council to review the decision that was fully favorable. Why, I'm not sure, but you did. And the Appeals Council took a look at the case and said, "Well, Judge Porter, maybe you really didn't really have a basis for issuing a fully favorable decision." And so they've directed it back to me, and I have to look at it all over again. And so Mr. Gillette, you represent the claimant?
>
> ATTY: Yes, your honor.
>
> ALJ: And so we have to make sure we're doing what the Appeals Council wants us to o [sic] do. So I'm looking at their order remanding the case back to me, and let's make sure we're doing – although, you, now you don't want it to be appealed. I saw your letter to the Appeals Council seeking to withdraw your appeal, but too late. They got your letter, and they remanded the case to me notwithstanding that. And so here I am.
>
> * * *
>
> ALJ: So here we are all dressed up and ready to go, when you appealed a decision that was fully favorable to you. And now you're telling me you haven't even updated the medical records?
>
> ATTY: Yes, your honor.
>
> ALJ: What are you doing for these people, Mr. Gillette?
>
> ATTY: Your honor, I clearly made a mistake when I filed the request to appeal the fully favorable decision. And that's why I withdrew it.
>
> * * *
>
> ALJ: . . . Now, ma'am, I'm not at all pleased, as you can tell, with Mr. Gillette's performance here. But I'm not going to hold that against you. . . . I have an obligation to you to make the best decision I can. If I have to get the evidence myself, I will. And I'm going to look at the evidence carefully, and I'm going to

---

> (a) Within 12 months of the date of the notice of the initial determination, for any reason.

>listen to your testimony, and I'm going to try to make the best decision I can. I'm not – there's no prejudice against you.

(Tr. 59-65.)

Social security proceedings are inquisitorial, not adversarial. *Sims v. Apfel*, 530 U.S. 103, 110–111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *see also* 20 C.F.R. § 404.900(b). The ALJ has "the duty to investigate the facts and develop the arguments both for and against granting benefits." *Id*. at 111, *citing Richardson v. Perales*, 402 U.S. 389, 400–401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "[T]he court must start from the presumption that administrative adjudicators are unbiased, and that honesty and integrity exist among them." *Wells v. Apfel*, 234 F.3d 1271 (Table), 2000 WL 1562845 at *5 (6th Cir. Oct. 12, 2000) (*citing Schwiker v. McClure*, 456 U.S. 188, 195-96, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982) & *Navistar Intern. Transp. Corp. v. U.S. E.P.A.*, 941 F.2d 1339, 1360 (6th Cir. 1991)). "The burden of overcoming the presumption of impartiality rests on the party making the assertion of bias, and the presumption can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Comm'r of Soc. Sec.*, 108 Fed. App'x 358, 364, 2004 WL 1922187 at *5 (6th Cir. Aug. 24, 2004) (internal citations and punctuation omitted). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id*. The burden to show bias is high. For instance, in *Wells*, the court found behavior that was "unbecoming a judicial officer" and "arguably discourteous" to plaintiff and her counsel was not enough to demonstrate bias. *Wells*, 234 F.3d 1271, 2000 WL 1562845 at *5; *see also Howard v. Astrue*, 2010 WL 1433438 at *5 (S.D. Ohio Mar. 17, 2010) (finding that the ALJ's statement to counsel, "[t]hen please shut up. Okay?," coupled with the fact that the ALJ stopped counsel's examination of plaintiff at two hearings, was not enough to show bias).

Here, Reighard has failed to set forth any evidence of bias. Her premise of bias based upon the "tongue-lashing of counsel" by the ALJ does not meet the high and stringent legal standard required to overcome the presumption of impartiality. Moreover, upon a review of the hearing transcript, the Court finds that the ALJ allowed Reighard time to file supplemental medical records:

> ALJ: All right, then I will hold the record open for 20 days for you to get those records. The record will automatically close after 20 days. If I don't receive them in that time period, I'll make a decision without them, and I may draw a negative inferences [sic] from the lack of those records. If you run into a problem, you may ask for more time. And I almost always give more time, but you have to ask. I need a cut-off point. And if you want to have Dr. Z complete a medical source statement indicating your ability to lift, carry, stand, walk on our standard form, you are free to do that as well. Once I get that, I'll take a look at it and see where we are. I may – I'm thinking that I may need a medical expert to get this down correctly this time. I may not. If I do, I'll let you know about that, and then we'll have another hearing where we have a medical expert testimony. And I can't say how displeased I am that we don't have the complete medical records today. You can think after you did what you did, you'd come in here flying straight, do the job for these people you got to do. But here you have appealed a favorable decision, and then you show up without the updated medical records. And it's a dig [sic] question here whether this disability is ongoing. But again, ma'am, I'll make a fair and best decision based on your testimony and the medical evidence. But you've wasted a lot of our time. You've wasted these people's time, and it's just not right.

(Tr. 97-98.)

The ALJ was clearly frustrated over counsel's failure to provide current medical records. He seemed determined, however, not to visit his frustration upon Reighard. Such expressions of frustration by the ALJ do not establish bias. *See Collier*, 108 Fed. App'x. 358, 363-364; *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) ("'expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display' do not establish bias."). More importantly, the ALJ's remand decision thoroughly reviewed all the medical records, including the new evidence, finding that her allegations of back pain and depression were inconsistent with the record:

> I acknowledge that the claimant stopped using pain medication while pregnant and while breastfeeding, and this alone is not persuasive in swaying this decision. However, what I do find peculiar is the absolute lack of information regarding debilitating back pain that one would expect after she stopped taking her medication. Indeed, there are routine office visits from Robert Znidarsic, M.D., from 2009 and 2010 (the period after which the claimant stopped narcotic pain medication), but these records are for acute illnesses, and they do not mention issues with debilitating back pain as one might expect given the frequency and intensity of symptoms the claimant alleges. They do not even mention the back problem. As discussed above, the objective findings from the claimant's August 2010 examinations at the pain management clinic do not indicate significant distress or functional limitations that would preclude regular and continuous work within the residual functional capacity adopted here.
>
> This is not the only inconsistency between the claimant's alleged limitations and the objective medical evidence, which raises issues of credibility. At the hearing, I questioned the claimant about treatment records that reference discussion of

10

>possibly using a spinal cord stimulator. The claimant testified specifically that her doctors recommended against it. They did not, they recommended it, but the claimant chose not to proceed (Exhibit BB2F/2). The claimant's treatment records reference some reluctance on the claimant's part to try a spinal cord stimulator, and one may understand the claimant's reluctance to undergo another back procedure. However, the misrepresentation of what her doctors' said undermines the credibility of her testimony. Lastly, the claimant's attorney seemed to rely heavily on the recommendation that the claimant was referred for psychiatric treatment in establishing a severe mental impairment, and the claimant went on to testify about significant depressive symptoms and frequent crying spells. However, the claimant never actually sought formal mental health treatment, nor did she require emergency attention or hospitalization for mental health symptoms. This undermines her testimony regarding the severity of her alleged mental health symptoms. Indeed, the claimant reported that she has daily crying spells, yet I find no mention of this issue in the record as one might reasonably expect to find given the frequency and severity with which she states they occur. The inconsistencies between the claimant's statements and the medical record and the lack of corroborative evidence in the medical record to support the claimant's alleged limitations renders her testimony less credible than it may otherwise have been. The information contained in her treatment records do not establish an inability to sustain regular and continuous work within the residual functional capacity adopted here.

(Tr. 23.) The decision in general reflects careful consideration of the evidence.

An objective observer, reviewing the hearing as a whole, would not conclude that the ALJ's fairness need be questioned. The entire hearing lasted over an hour and involved questioning Reighard on a variety of matters, including her daily activities, treatment history and symptoms. The Court cannot conclude that the ALJ's frustration with counsel affected the outcome of the hearing. *See Collier*, 108 Fed. App'x at 363-364 (6th Cir. 2004).

### III. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

s/ Greg White<br>
United States Magistrate Judge

Date:  June 1, 2012